UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSH R. SANTINI,                               CASE NO. 2:21-cv-13045

      *Plaintiff*,
v.                                             HON. DAVID M. LAWSON
                                               DISTRICT JUDGE

KIM FARRIS,                                    HON. PATRICIA T. MORRIS
                                               MAGISTRATE JUDGE
      *Defendant*.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION FOR A PRELIMINARY INJUNCTION (ECF No. 5)**

I. **RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **DENY** Plaintiff's motion for a preliminary injunction (ECF No. 5).

II. **REPORT**

   A.   Introduction

Before he was incarcerated, Plaintiff survived a deadly car accident which left him with chronic abdominal pain. Plaintiff was hospitalized for forty days and spent the following year in rehabilitation. During this time, Plaintiff regularly attended a pain management clinic where staff told him that he would likely require permanent treatment for his pain. However, after Plaintiff joined a state prison, his new physician refused to ask prison officials to approve pain medication stronger than Tylenol, fearing that Plaintiff could become addicted to stronger medication. Dissatisfied with his physician's choice,

1

Plaintiff convinced a nurse practitioner at the prison to request pain medication on his behalf. But after the nurse practitioner's efforts stalled, Plaintiff brought the instant lawsuit against Defendant and moved this Court to issue a preliminary injunction, requiring her to request pain treatment on his behalf. For the following reasons, I suggest that the Court deny Plaintiff's motion.

### B. Background

Plaintiff is a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") at the Macomb Correctional Facility ("MCF"). (ECF No. 1, PageID.2.) Although Plaintiff suffers from severe and chronic abdominal pain, healthcare staff at MCF have not provided him with any pain medication stronger than Tylenol. (*Id.* at PageID.3.)

In November 2015, Plaintiff sustained a traumatic brain injury, "multiple" bone fractures, a bruised lung, a liver laceration, and "pneumothorax with lower intestine puncture" in a car accident. (*Id.* at PageID.2.) Following the accident, Plaintiff spent forty days in a hospital where doctors prescribed him "Percocet" and "a Fentanyl patch," to alleviate his pain. (*Id.*) Plaintiff spent the next year in therapy and attended a pain management center. (*Id.* at PageID.2–3; ECF No. 5, PageID.30.) "Medical staff" at this center opined that Plaintiff "would likely require" permanent "pain management." (ECF No. 1, PageID.2–3.)

Plaintiff was incarcerated a year after his accident, and in July 2018, he was transferred to the MCF. (*Id.* at PageID.3.) Around this time, Plaintiff moved to a lower

security housing unit which allowed him to "become more active." (ECF No. 5, PageID.28.) Because his dietician "recommended" that he "remain active" to "lose weight," Plaintiff took advantage of his new housing unit by "walk[ing] around more often." (*Id.*) However, Plaintiff found that this caused significant pain. (*Id.*)

In attempt to manage his pain, Plaintiff met with Defendant, Kim Farris, a physician's assistant. (*Id.*) Defendant works for Corizon, a private medical provider contracted by the MDOC. (*See* ECF No. 1, PageID.2.) Plaintiff asked her to place him "on pain management similar to what [he] had been on before." (ECF No. 5, PageID.28.) Although Plaintiff had previously taken Percocet and fentanyl, he claims that he did not request "opiates" from Defendant. (*Id.*)

Defendant declined Plaintiff's request, explaining that she was concerned that Plaintiff might "become addicted to" any medication like what he had taken at the pain management center. (*Id.*) However, Defendant did not suggest any alternatives that Plaintiff believed were "reasonable." (*Id.*)

Plaintiff continued to request pain management over the next year and a half, and during this time he spoke with Defendant on "multiple occasions." (*Id.*; ECF No. 1, PageID.3.) Still, neither Defendant nor any other healthcare staff member would provide Plaintiff with his requested treatment. (ECF No. 5, PageID.28.) Healthcare staff did, however, give Plaintiff Motrin and Tylenol, but neither medication alleviated his pain. Eventually, Defendant refused to renew Plaintiff's Motrin prescription. (*Id.*; ECF No. 1, PageID.3.)

On January 5, 2021, Plaintiff "felt" a "tear in his stomach" when he sat up in his bed. (ECF No. 1, PageID.3–4.) Plaintiff met with a nurse that night. (*Id.* at PageID.4.) After examining Plaintiff, the nurse suggested that Plaintiff get out of bed by "rolling on his side," rather than "sitting up." (*Id.*) The nurse gave Plaintiff "a packet of Motrin" and sent him back to his cell. (*Id.*)

Two months later, Juliana Martino, a nurse practitioner, examined Plaintiff. (*Id.*) Based on Plaintiff's reports of "severe stomach pain" and the "physical damage" to his abdomen Martino agreed that Plaintiff required pain management, but she warned Plaintiff that she would have to "'jump through hoops' to convince her supervisors to approve" her request for pain management. (*Id.*) Martino later requested prison officials to allow Plaintiff to take Neurontin "to control [his] constant pain." (ECF No. 5, PageID.30.)

Days after his examination, Plaintiff spoke with a nurse over the phone about his chronic pain. (ECF No. 1, PageID.4.) Although the nurse "agreed that he" required more involved pain management, she told Plaintiff that she could not provide him with pain management because he had just met with Martino. (*Id.*) Plaintiff then sent Martino a letter, asking her if she could "expedite his pain management request." (*Id.*) However, a nurse in his unit later told him that Martino likely would not see his letter "because nurses do not send [letters] to the [healthcare] providers." (*Id.*)

Around this time, Plaintiff "submitted a medical request" for pain management. (ECF No. 5, PageID.28.) However, because of the COVID-19 pandemic, the MCF healthcare unit declined to meet with Plaintiff, explaining that they would only see patients for emergencies. (*Id.*) Nonetheless, Plaintiff claims that he met with two medical

4

professionals, both of whom advised Plaintiff that they could do "very little" to treat his pain. (*Id.*)

Plaintiff filed a complaint against Defendant on December 17, 2021, alleging that Defendant (1) violated his right to be free from cruel and unusual punishment, (2) violated Title II of the Americans with Disabilities Act, and (3) negligently breached a duty of care towards Plaintiff. (ECF No. 1, PageID.4–7.) Plaintiff moved for an ex parte preliminary injunction on January 15, 2022, seeking to compel Defendant to provide him with treatment for his pain. (ECF No. 5.) Plaintiff claims that he sent Defendant "a notice of [his] intent to seek an injunction," but Defendant did not respond. (*Id.* at PageID.29.) Defendant received a summons with a copy of Plaintiff's complaint on January 31; however, she has not yet appeared before the Court. (ECF No. 11.)

### C. Plaintiff's Motion for Injunctive Relief

I suggest that Plaintiff's motion for a preliminary injunction should be denied on its merits. The moving party carries the burden of proving that he or she is entitled to a preliminary injunction. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Because preliminary injunctive relief is an "extraordinary remedy," courts are hesitant to grant preliminary injunctive relief and will only do so if an injunction is "clearly" warranted. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Moreover, given the "unique nature of a prison setting," where a prisoner moves to enjoin "prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL

3894652, at *2 (W.D. Mich. Aug. 8, 2014) (citing *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir.1988)).

When considering whether to issue a temporary restraining order, a court must balance the following four factors: (1) the movant's likelihood of success on the merits, (2) whether the movant "is likely to suffer irreparable harm in the absence of preliminary relief," (3) whether "the balance of equities tips in" the movant's "favor," and (4) whether the "injunction is in the public interest." *Winter v. Nat. Res. Def. Comm'n*, 555 U.S. 7, 20 (2008). No one factor is controlling, and except for the movant's risk of irreparable injury, no single factor is required to obtain injunctive relief. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102–03 (6th Cir. 1982) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Instead, these factors must be "carefully balanced" by the district court. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261 1263 (6th Cir. 1985). Further, although a movant with "no likelihood of success on the merits" generally cannot obtain injunctive relief, a movant need not show an "overwhelming" probability of success on the merits. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. Aug. 22, 2000); *Sellers v. U. of Rio Grande*, 838 F. Supp.2d 677, 679 (S.D. Ohio 2012).

First, Plaintiff has not shown that he would clearly "suffer irreparable harm in the absence of" the injunction. *Winter*, 555 U.S. at 20; *see also Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). Plaintiff's ongoing pain is an irreparable injury—it cannot be remedies with monetary damages. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007); *see Wheeler v. Wexford Health*

6

*Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012) (holding that pain may constitute an irreparable injury). But Plaintiff must show not just that he faces an irreparable harm, but that the injunction would clearly avoid this injury. *See Winter*, 555 U.S. at 20; *United States v. Bolton*, 468 F. Supp.3d 1, 6 (D.D.C. June 20, 2020) ("The government has not carried its burden of establishing that an injunction will prevent irreparable injury."). Plaintiff alleges that Defendant is a physician's assistant at the prison who, between July 2018 and January 2020, denied Plaintiff pain medication on several occasions. (ECF No. 1, PageID.3–4.) However, in March 2021, Plaintiff met with a nurse practitioner who agreed that Plaintiff required pain medication. (*Id.* at PageID.4.) The next month, the nurse practitioner sent a request, presumably to prison authorities, asking that Plaintiff be approved for Neurontin, or any other form of pain management. (ECF No. 5, PageID.30.) This request has not yet been approved.

Plaintiff does not explain why Defendant would be better in a better position to obtain pain treatment. Plaintiff already has a request pending for pain medication, and he does not explain why another request from Defendant would accelerate this process. Plaintiff does not allege, for example, that Defendant can approve pain medications for prisoners. If Defendant were ordered by this Court to prescribe pain medication to Plaintiff, it appears that she would have to go through the same process as the nurse practitioner.[1] Because another physician has already requested pain medication on his

---

[1] Indeed, Plaintiff also states that he asked Defendant to "seek pain management for" him, suggesting that like the nurse practitioner, her requests for pain management would have to be approved by prison officials. (ECF No. 5, PageID.28.)

7

behalf, and because Plaintiff does not allege that Defendant is in a better position to obtain pain medication, Plaintiff has not clearly shown that the requested injunction would avoid an irreparable harm. On this factor alone, I suggest that the Court should deny Plaintiff's injunction. *See Friendship Materials*, 679 F.2d 100, 102–03 ("[T]his court has never held that a preliminary injunction may be granted without any showing that the plaintiff would suffer irreparable injury without such relief.").

Even if Plaintiff could clearly show that the requested injunction would prevent an irreparable injury, the remaining factors weigh against the issuance of an injunction.

First, Plaintiff has not shown "a strong likelihood of success on the merits." *Bays*, 668 F.3d at 818–19. Plaintiff alleges that Defendant violated his right to be free from cruel and unusual punishment under the Eighth Amendment and the Michigan Constitution's analogous provision, and he alleges that Defendant violated Title II of the Americans with Disabilities Act ("ADA"). Plaintiff also joins a state-law negligence claim.

Plaintiff's ADA claim lacks merit. Parties may not bring claims under Title II of the ADA against either individuals or private entities. *See Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Lee may not maintain an action under the ADA or the RA against the individual defendants identified in his complaint because neither the ADA nor the RA impose liability upon individuals.") (first citing 29 U.S.C. § 794(b), and then citing 42 U.S.C. § 12131(1)); *Cox v. Jackson*, 579 F. Supp.2d 831, 852 (E.D. Mich. 2008) ("Defendant CMS is neither a state or local government, nor a department, agency, or instrumentality of the state. A private contractor does not become a 'public entity' under

Title II merely by contracting with a governmental entity to provide governmental services."). Defendant is an individual, and she is an employee of a private company—even if this company is contracted by the MDOC. *See Wilkins-Jones v. County of Alameda*, 859 F. Supp.2d 1036, 1046 (N.D. Cal. 2012) ("The majority of courts . . . have held that Title II does not apply to government contractors.").

Plaintiff's Eighth Amendment and "negligence" claims look more promising, but even here, his probability of success is far from clear. An official violates the Eighth Amendment where he or she acts with "'deliberate indifference' to an inmate's 'serious medical needs.'" *Plair v. Holmes*, No. 1:19-cv-815, 2020 WL 8187989, at *5 (W.D. Mich. Dec. 29, 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)). For an inmate to show that prison officials violated the Eighth Amendment by denying medical care, the inmate must show (1) that he or she was deprived of an objectively serious medical need, and (2) that the defendant knew "of and disregard[ed] an excessive risk to [his or her] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rhinehart v. Scutt*, 894 F.3d 721, 737–38, (6th Cir. 2018).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). An inmate satisfies this prong if he or she receives no treatment for a serious medical need. *Rhinehart*, 894 F.3d at 737. However, if an inmate's condition is "minor or non-obvious," or the prisoner has received medical treatment, but alleges that the prison did not

9

adequately treat his or her condition, then the prisoner must show that the treatment he or she received was so inadequate "as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quotation marks omitted) (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005)). This often requires "'expert medical testimony . . . showing the medical necessity for' the desired treatment and 'the inadequacy of the treatments' the inmate received." *Id.* (quoting *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017)). It will also often require the plaintiff to "place verifying medical evidence in the record to establish the detrimental effect of the" inadequate medical treatment. *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

Here, because Plaintiff contests the adequacy of his treatment, he must overcome this high bar. At the time Plaintiff sought pain medication from Defendant, he regularly took ibuprofen and acetaminophen. (ECF No. 1, PageID.3.) However, these medications were ineffective, and Plaintiff asked Defendant on multiple occasions to "seek" additional "pain management" on his behalf. (*Id.*) Defendant declined Plaintiff's requests, concerned with the risk that Plaintiff would become addicted to any effective pain medication. (*Id.*) Thus, Plaintiff does not allege that Defendant simply ignored his medical needs— Defendant met with him multiple times and, exercising her medical judgment, declined to prescribe medication that would be more potent than ibuprofen or acetaminophen. (*Id.*); *see Rhinehart*, 894 F.3d at 737.

Accordingly, Plaintiff must show that Defendant's decision was so inadequate as to "shock the conscience." *Rhinehart*, 894 F.3d at 737. And he provides some circumstantial

evidence to this end. Specifically, Plaintiff describes the rather serious injuries he sustained shortly before he was incarcerated, and he lists two pain medications, Percocet and fentanyl, which he took while he was hospitalized. (ECF No. 1, PageID.2–3.) Plaintiff mentions that doctors at the pain management center opined that he would "likely" need permanent pain management. (*Id.*) And Plaintiff attaches a medical request from a nurse practitioner at the prison who recommended that Plaintiff take Neurontin, a pain medication. (ECF No. 5, PageID.30); *cf. Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012).

Still, mere disagreement with a medical professional's decision does not constitute an Eighth Amendment violation. While a juror might conclude, from Plaintiff's severe injuries and Defendant's disagreement with other professionals, that Defendant's decision was inadequate, the evidence presented to the Court is limited and one-sided. Defendant is a medical professional, and her disagreement with the nurse practitioner over the proper course of treatment may simply be a reasonable dispute between professionals, rather than evidence that Defendant's choice to withhold pain medication was seriously inadequate. Indeed, Defendant apparently expressed legitimate concerns over the potential side effects of pain medication, and Plaintiff suggests that other healthcare professionals at MCF did not believe that his pain could be treated. (ECF No. 5, PageID.28); *cf. Lashuay v. Vanbergen*, No. 17-cv-13581, 2020 WL 1242819, at *11 (holding that a prison official did not violate the Eighth Amendment by tapering a prisoner off pain medication).

11

Moreover, even if Plaintiff can demonstrate that Defendant failed to adequately treat a serious medical condition, then he must also show that she knew of, but "disregard[ed,] an excessive risk to" his "health or safety." *Id.* at 738. This requires showing that Defendant acted with "deliberateness tantamount to intent to punish." *Miller*, 408 F.3d at 813. A doctor who "provides reasonable treatment, even if the outcome of the treatment is insufficient or . . . harmful" is not liable under the Eighth Amendment. *Rhinehart*, 894 F.3d at 738. "Accordingly, when a claimant challenges the adequacy of an inmate's treatment, 'this Court is deferential to the judgments of medical professionals.'" *Id.* (quoting *Richmond v. Huq*, 885 F.3d 928, 940 (6th Cir. 2018)).

Again, Plaintiff provides the Court with some allegations that call Defendant's decision into question. But he must demonstrate that her decision was "tantamount to an intent to punish." *Miller*, 408 F.3d at 813. This is a considerably high bar, and Defendant's choice to not provide pain medication could be well-founded in legitimate concerns over Plaintiff's health, even if other professionals may have been less conservative. *Id.*; *Jones*, 569 F.3d at 265.

Given these significant hurdles, "[c]ourts have consistently denied prisoners' requests for preliminary injunctive relief where their claims were based on their disagreement with the adequacy of treatment they received at the prison." *Courtney v. Prison Health Servs.*, No. 10-cv-14123, 2011 WL 1532159, at *4 (E.D. Mich. Feb. 28, 2011) (first citing *Kennedy v. Potter*, 344 F. App'x 987 (5th Cir. 2009), and then citing *White v. Goff*, 348 F. Appx. 366, (10th Cir. 2009)). Although Plaintiff provides some

support for his claim, he must overcome substantial burdens to succeed, and based on the limited information available to the Court, Plaintiff's likelihood of success is uncertain.

Likewise, it would be difficult for Plaintiff to succeed on his negligence claim. Plaintiff cites Mich. Comp. L. § 691.1407 for the proposition that Defendant acted with "gross negligence" by denying pain medication. First, to clear up some confusion, Mich. Comp. L. § 691.1407 "does not itself create a cause of action." *Olmetti v. Kent County*, No. 1:20-cv-395, 2020 WL 8474742, at *5 (W.D. Mich. Nov. 13, 2020). Rather the statute simply provides that government officials are immune from tort actions unless, among other elements, they were at least grossly negligent. Mich. Comp. L. § 691.1407(2). But this statute does not apply here because Defendant is not a government official. *Hamer v. County of Kent*, No. 1:13-cv-504, 2014 WL 1276563, at *9 (W.D. Mich. Mar. 27, 2014) (holding that Defendants employed by Corizon were not protected under Mich. Comp. L. § 691.1407).

Further, what Plaintiff refers to as a "negligence" claim, is actually a medical malpractice claim. *See Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 43 (1999) (holding that plaintiffs cannot "avoid" the "procedural requirements of" malpractice actions by "couching" their "cause of action in terms of ordinary negligence"). Under Michigan law, a claim arises out of medical malpractice, rather than ordinary negligence, if the following two elements are met: (1) "the claim pertains to an action that occurred within the course of a professional relationship; and (2) . . . the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant v.*

13

*Oakpointe Villa Nursing Centre*, 471 Mich. 411, 420–24 (2004). Plaintiff's claim meets both elements. Plaintiff admits that he met with Defendant, a physician's assistant, multiple times to consult with her regarding his ongoing pain. And a physician's judgment regarding whether a patient should undergo pain treatment is "beyond" the knowledge of most laypersons. *Cf. Alexander v. Fillion*, No. 2:16-cv-64, 2017 WL 6887038, at *4 (W.D. Mich. Oct. 8, 2017) (holding that a plaintiff raised a medical malpractice claim by alleging that his healthcare provider did not prescribe pain medication).

Having properly framed Plaintiff's claim as sounding in medical malpractice, rather than ordinary negligence, Plaintiff must satisfy the elements for a medical malpractice claim.[2] These elements largely track the requirements for an ordinary negligence claim—the plaintiff must prove that the defendant breached the applicable standard of care, that he or she was injured, and that the defendants breach was the proximate and actual cause of his or her injuries. *Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 86 (2004). Medical malpractice claims differ from ordinary negligence claims in the standard of care the defendant is held to. A general practitioner, like Defendant, is held to "the recognized standard of acceptable professional practice or care in the community in which [he or she] practices or in a similar community." Mich. Comp. L. 600.2912(a); *see also Bahr v.*

---

[2] Michigan law also requires that medical malpractice plaintiffs notify defendants before filing a complaint and that plaintiffs file "an affidavit of merit" along with their complaints. Mich. Comp. L. §§ 600.2912b, 600.2912d. However, the Sixth Circuit recently held that plaintiffs need not comply with these procedural rules when filing medical malpractice claims in federal court. *Albright v. Christensen*, ___ F.4th ___, 2022 WL 278385, at *6 (6th Cir. 2022).

*Harper-Grace Hosps.*, 448 Mich. 135, 138 (1995). Generally, a plaintiff cannot establish this burden of proof without expert testimony. *Elher v. Misra*, 499 Mich. 11, 21 (2016)

At this stage, the Court cannot meaningfully opine on the merits of Plaintiff's medical malpractice claim. Taking Plaintiff's complaint and affidavits at face value, he may be able to put forth evidence establishing that Defendant breached a duty of care. Indeed, Plaintiff's physicians at the pain management center and the nurse practitioner at the MCF both believed that he required long-term pain management. (ECF No. 5, PageID.27–28.) But Plaintiff also alleges that Defendant and other healthcare staff at the MCF believed that his pain could not be treated. (*Id.* at PageID.28.) Based on nothing more than his assertions, the Court cannot accurately predict Plaintiff's likelihood of success on this claim.

In addition, the Court may decline to exercise supplemental jurisdiction over this claim. Although federal courts may exercise jurisdiction over state law claims that "form part of the same case or controversy" as the claims that are within the court's original jurisdiction, federal courts may decline to exercise jurisdiction over a claim "that raises novel or complex issues of state law" or that raises "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(a), (c) (2012). As this Court has recognized, "the line between gross negligence and medical malpractice" is an important state law issue. *Rhinehart v. Scutt*, No. 11-cv-11254, 2014 WL 5361939, at *9 (Oct. 21, 2014). This is particularly true in prison litigation because "few Michigan cases offer guidance on how to evaluate gross negligence and medical practice in the prison context, when officials have

a unique degree of control over prisoners' access to health care." *Id.* Moreover, trying Plaintiff's Eighth Amendment and Medical Malpractice claims together may confuse jurors if the case proceeds to trial. *See id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1966). Both claims apply independent standards that "often overlap," and jurors would have difficulty "delineating the differences" between both claims. *See id.* With these concerns in mind, Plaintiff's medical malpractice claim might not survive dispositive motions.

Last, I suggest that the balance of the equities weighs against a preliminary injunction.[3] Although the preliminary injunction would place a minimal burden on Defendant, and Plaintiff would continue to experience ongoing pain without the TRO, this case presents an unusual situation where the requested injunction may be detrimental to the moving party's own interests. *See Winter*, 555 U.S. at 20.

Plaintiff asks this Court to require Defendant to provide "immediate" pain treatment without specifying what treatment should be provided. And based on the scant record, the Court is in no position to mandate any specific treatment. If an injunction is granted at all, it would have to be open-ended, leaving the specific treatment within Defendant's discretion. Moreover, whatever treatment Defendant chooses would need to be effective—after all, the purpose of a preliminary injunction is to avoid irreparable injury. *Friendship*

---

[3] Plaintiff's injunction would not seriously impact the public interest.

16

*Materials, Inc.*, 679 F.2d at 102–03.  Simply mandating Defendant to treat Plaintiff without regard to the effectiveness of her treatment would not accomplish this goal.  *See id.*

But such an open-ended injunction could incentivize Defendant to make imprudent medical decisions.  The Court does not know what treatments would be effective, and the only treatments we know have been effective so far are opiates—drugs which are notoriously addictive and capable of devastating impacts if not carefully managed.  It could very well be that only opiates, or similarly risky drugs, can provide any meaningful pain relief.  (*See* ECF No. 5, PageID.28 (explaining that two medical professionals advised Plaintiff that his pain could not be treated).).  And if so, this injunction could push Defendant to pursue treatments that expose Plaintiff to an unjustifiably high level of risk.

Apparently, a nurse practitioner recommended that Plaintiff take Neurontin to manage his pain, but similar concerns counsel against pushing Defendant to pursue this course of treatment.  The Court does not know the risks associated with Neurontin, and it should refrain from interfering with a medical professional's ability to objectively weigh the risks and benefits of various treatments.  *See Gabapentin (Neurontin)*, GoodRx, https://www.goodrx.com/gabapentin/what-is (last visited Feb. 8, 2022).  *See generally Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("[F]ederal courts are generally reluctant to second guess medical judgments . . . .").

Of course, Plaintiff might also benefit from this injunction, but the Court simply does not know what result would come.  Plaintiff asks the Court to craft an injunction from a position of ignorance—we know little about his medical history, and we are laymen

17

concerning medical issues. Unlike medical professionals who are well-equipped to evaluate treatment options, the Court is in a poor position to say whether this injunction would be in Plaintiff's best interest. An overzealous injunction could lead to harmful consequences.

Accordingly, should the Court reach the merits of Plaintiff's motion, I suggest that Plaintiff's motion should be denied.

### D. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **DENY** Plaintiff's motion for a preliminary injunction (ECF No. 5).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 15, 2022

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge